```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

ENOH A. JOHNSON,              )
        Plaintiff,            )
                              )
        v.                    )    C.A. No. 12-10908-DPW
                              )
JOSEPH D. McDONALD, et al.,   )
        Defendants.           )
```

MEMORANDUM AND ORDER

For the reasons stated below, the Court allows Defendants' motion to dismiss and denies Plaintiff's motions.

PROCEDURAL BACKGROUND

Plaintiff Enoh Johnson ("Johnson") is a resident of Massachusetts and a citizen of Sierra Leone, but at times relevant to this action, was a detainee of Immigration and Customs Enforcement ("ICE") at the Plymouth County Correctional Facility ("PCCF"). Johnson initiated this civil rights action almost two years ago, on May 16, 2012, by filing a pro se Complaint against the Plymouth County Sheriff alleging that he received inadequate medical treatment for his depression and that he was subject to an unlawful strip search by unnamed correction officers. See Docket No. 1.

By Memorandum and Order dated June 18, 2012, Johnson was advised of the pleading deficiencies in his Complaint and was directed to show cause why his Complaint should not be dismissed. See Docket No. 4.

Johnson was permitted to file an Amended Complaint adding as defendants Assistant Deputy Superintendent Kelly Norton and

former mental health intern Cara Smethurst, however, his claims against Sheriff McDonald were dismissed.  <u>See</u> Docket No. 10.

In May 2013, Johnson's request to reconsider the dismissal of Sheriff McDonald was denied and Johnson was granted until July 26, 2013 to serve his Amended Complaint on Norton and Smethurst. <u>See</u> Docket No. 14.  Defendant Norton was served, however, the summons for Smethurst was returned as unexecuted because Smethurst is no longer employed at PCCF.  <u>See</u> Docket.

The Court's records indicate that on the final day for service of Defendant Smethurst, Johnson filed a motion seeking further extension.  <u>See</u> Docket No. 19.  Defendants filed an opposition. <u>See</u> Docket No. 23.  Johnson filed a reply to Defendants' opposition.  <u>See</u> Docket No. 28.

Defendants filed a Motion to Dismiss the Amended Complaint with Supporting Memorandum.  <u>See</u> Docket Nos. 20, 21.  Johnson filed an opposition, <u>see</u> Docket No. 26, as well as a Second Motion to Amend.  <u>See</u> Docket No. 27.  The Defendants have opposed Johnson's Second Motion to Amend.  <u>See</u> Docket No. 29.

<u>PLAINTIFF'S AMENDED COMPLAINT</u>

The following are drawn from Plaintiff's Amended Complaint. <u>See</u> Docket No. 6.  There are several prison documents attached to the Amended Complaint and the factual allegations are contained in four discrete paragraphs.  <u>Id.</u>  The facts and all reasonable inferences will be presented here in a light most favorable to

Plaintiff as the party opposing dismissal. Young v. Lepone, 305 F.3d 1, 8 (1st Cir. 2002).

On November 19, 2009, Johnson arrived at the PCCF and was processed in the medical wing by a nurse. Am. Compl., ¶ 1. During his intake, he underwent a medical evaluation and Johnson disclosed to the intake nurse his mental health history, including his history of chronic mental illness and depression. Id. Johnson informed the intake nurse that he was currently be treated for depression and that he was taking Paxil daily to treat his mood disorder. Id. Johnson signed a release to allow the medical personnel to retrieve his mental health records from the Boston Medical Center and the Bristol County House of Corrections. Id.

A PCCF Summary Adm. Note screened by "Wheeler Gail" and dated "11/18/2009 at 9:46 PM" indicates that Johnson's name was to be added to the mental health list and that Paxil was noted as his medication. Id., Exhibit 6-4. The following day, on November 19th, 2009, Johnson was seen by "MH", evaluation was done and he was "seen stable." Id.

Johnson contends that "it took Plymouth County House of Corrections approximately sixty days to finally start administering anti-depressants [to Johnson at which time he was] "exhibiting debilitating signs of his mental illness and of severe suicidal thoughts." Id. at ¶ 2.

Johnson alleges that he filed with defendant Norton "numerous grievances" concerning "the lack of medical care not (sic) being administered to him in order to medicate his chronic depression." Id. at ¶ 2. Johnson submitted a copy of his Inmate Request addressed to defendant Norton, dated January 28, 2010, concerning mental health and asked that defendant Norton "please explain to Hon. Brenda O'Malley and DHS why this Facility is not treating my illness?" Id., Exhibit 6-1. The document states that staff followed up and verified that Johnson had received a medical evaluation on the very same day that he submitted the request. Id.

Johnson also submitted a Sick Call Request Form to the PCCF Health Services Unit ("HSU") [dated January 26, 2010 and titled "GRIEVANCE"] stating that he (1) has "been in your custody from 11/19/2009 to present" (2) wonders why PCCF "refused to treat my medical problem;" and (3) asking simply how he can "get treatment [and he has] been waiting to see a Mental Health Treatment." Id. Exhibit 6-2. Two days later, on January 28, 2010, the HSU staff placed Johnson on the list for a medical evaluation. Id.

Johnson's mental health record indicates that he met with the psychiatric nurse on January 28, 2010, the same day of his request to defendant Norton. Id. at ¶ 6-4. The record indicates that Johnson reported that he was not getting his medication and, as Johnson requested, the psychiatric nurse re-ordered Paxil.

4

Id.

Johnson alleges that during a subsequent mental health evaluation, he disclosed to a psychiatrist at PCCF that "he had been deprived of his anti-depressants for more than thirty days." Id. at ¶ 3. Johnson alleges that the "psychiatrist did not do anything to help" and "failed to expedite the administering of [Johnson's] medication." Id.

On February 17, 2010, Johnson filed a Sick Call Request Form with the PCCF Medical Department explaining that since November 2009, he has asked daily for his mental health medication, "to no avail." Id. Exhibit 6-5. Johnson asked to see a Psychiatrist "because it have 6-3(sic) been over 90 days without treatment." Id. The medical staff referred Johnson to Mental Health the same day. Id. The same day, Johnson was seen by Mental Health. Id. at Exhibit 6-6.

Johnson alleges that he met with defendant Smethurst from the PCCF mental health division and informed her that he had a pending Political Asylum Application pursuant to the United Nations Convention Against Torture. Id. at ¶ 4. An exhibit submitted by Johnson shows that this meeting took place on March 25, 2010. Id. at Exhibit 6-3. Johnson alleges that he told Smethurst that he was subjected to an abusive strip search on May [March] 14, 2010 that had been conducted by PCCF correction officers and that was captured on video camera surveillance. Id.

5

Smethurst wrote in her evaluation that, after hearing that he already filed a grievance, she responded to Johnson's allegations by recommending several coping strategies.

An exhibit submitted by Johnson shows that he also met with defendant Smethurst on February 17, 2010, to discuss his access to medication. Id. at Exhibit 6-3. Although Smethurst told Johnson to present himself to the medication cart, an action that had apparently been unsuccessful, Smethurst also checked the medication protocol, reviewed the chart to verify that Johnson was prescribed the medication, and spoke directly to the medical supervisor, who agreed to look into the matter and follow-up. Id.

## DISCUSSION

I. Motion to Dismiss

   A. Standard of Review

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(citation and internal quotation marks omitted). Factual allegations must "raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and provide "more than an unadorned, the

defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)).

Although "pro se pleadings are to be liberally construed, in favor of the pro se party[,]" Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990), a court should not credit "bald assertions ... or problematic suppositions." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations omitted). This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with' a defendant's liability"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. Id. at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. (internal quotation marks and alteration omitted).

A court may consider documents "central to the plaintiffs' claim" or "sufficiently referred to in the complaint" without converting the motion to dismiss into one for summary judgment. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); Giragosian v.

7

Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (district courts are generally limited to considering facts and documents that are incorporated into the complaint).  Consequently, I will consider the prison records attached to Plaintiff's Amended Complaint, and referenced in Defendants' Memorandum and In Support of Motion to Dismiss.  See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998) (citations omitted) ("When ... a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

However, without converting the motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 12(d), the Court may not consider the exhibit attached to Johnson's Opposition to Defendants' Motion to Dismiss. Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008) ("[I]f the district court chooses ... to ignore supplementary materials submitted with the motion papers and determine the motion under the Rule 12(b)(6) standard, no conversion occurs and the supplementary materials do not become part of the record for purposes of the Rule 12(b)(6) motion.").

Similarly, the Court may not consider any new factual allegations set forth in Johnson's briefing, Miller v. Suffolk

Cty. House of Corr., No. 01-cv-11331, 2002 WL 31194866, at *2 n. 1 (D. Mass. Sept.27, 2002), even when the plaintiff is pro se, Steele v. Turner Broad. Sys., Inc., 607 F. Supp. 2d 258, 263 (D. Mass. 2009) ("[A]ssertions in an opposition to a motion are not the equivalent of factual pleadings. To allow Steele to plead facts in such a manner would grant too much leeway to a pro se plaintiff at the expense of orderly procedure and would deprive the defendants of clear notice of the allegations against them.").

    B.    The Amended Complaint Fails to State a Civil Rights Claim Against Defendants Norton or Smethurst

Plaintiff failed to plead sufficient facts to demonstrate that Norton or Smethurst violated Johnson's civil rights by denying him medical care.

Section 1983 is a vehicle for vindicating substantive rights conferred by the Constitution or laws of the United States that have been violated by persons acting under color of state law. See Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); Albright v. Oliver, 510 U.S. 266, 315, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The First Circuit has applied the same analysis for claims of deliberate indifference under the Fourteenth Amendment, for pretrial detainees such as Johnson, and the Eighth Amendment, for convicted inmates. Burrell v. Hampshire County, 307 F. 3d 1, 7 (1st Cir. 2002).

Prison officials violate the Eighth and Fourteenth

Amendments if they exhibit a "deliberate indifference" to a pretrial detainee's serious medical needs. Feeney v. Corr. Med. Servs., 464 F.3d 158, 161–62 (1st Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). In order to succeed on a deliberate-indifference claim based on inadequate or delayed medical care, "a plaintiff must satisfy both a subjective and objective inquiry." Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir.2011) (quoting Burrell v. Hampshire County, 307 F.3d at 8). Subjectively, he must show "that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety." Id. Objectively, he must establish that the deprivation alleged was "sufficiently serious." Id. "The standard encompasses a 'narrow band of conduct': subpar care amounting to negligence or even malpractice does not give rise to a constitutional claim; rather, the treatment provided must have been so inadequate as to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' " Id. at 497 (quoting Feeney, 464 F.3d at 162 and Estelle, 429 U.S. at 105–06).

Additionally, Norton cannot be held liable for the conduct of her subordinates solely under a theory of respondeat superior ("supervisory") liability; instead liability must be based on a supervisor's own acts or omissions. See Whitfield v.

10

Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005). A plaintiff must show an "affirmative link" between the subordinate officer and the supervisor, "whether through direct participation or through conduct that amounts to condonation or tacit authorization." Carmona v. Toledo, 215 F.3d 124 (1st Cir. 2000) (quoting Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999)).

As an additional argument against liability, Norton argues that she "was justified in delegating tasks to others in the organization." See Docket No. 21 (citing Clancy v. McCabe, 441 Mass. 311, 320 N. 13 (2004), quoting Camilo-Robles v. Zapata, 175 F.3d 41, 46 N. 2 (1st Cir. 1999) ("For bureaucratic structures (or any other form of social organization) to function, the ability to delegate responsibility and to trust judgment of others is essential")). Norton argues that this "delegation is especially important where the medical professionals have expertise which is beyond that of the corrections officials as a (sic) laypersons." Id. (citing Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.")).

Johnson's Amended Complaint fails to provide facts sufficient to state a claim under Section 1983 against Defendants Norton and Smethurst. Although Johnson was allegedly deprived of

his medication for, what appears to be, a lengthy period of time, the facts alleged do not support a claim of deliberate indifference on the part of these two defendants to Johnson's serious medical need. Johnson seeks to attribute this delay to Norton, with whom he had filed complaints and/or grievances. As an initial matter, the copy of the grievance that Johnson submitted to defendant Norton, see Am. Compl., ¶ 6-1, shows that staff followed up and verified that Johnson had received a medical evaluation on the very same day that he submitted the request. Id. The sick call request, id. at 6-2, also shows that the medical staff followed-up and arranged a medical evaluation for Johnson.

Based upon the allegations in the Amended Complaint, no reasonable fact finder could conclude that the two defendants condoned unconstitutional conduct or acted with deliberate indifference.

Finally, as noted in Defendants' Opposition, see Docket No. 21, Johnson does not appear to claim that either defendant Norton or Smethurst is responsible for the strip search. To the extent Johnson seeks to assert such a claim, the Court finds that it is not actionable against these two defendants. Accordingly, I will grant the Defendants' Motion to Dismiss.

II. Plaintiff's Motions

    A. Plaintiff's Second Motion to Amend

Johnson has filed a Second Motion to Amend seeking to "re-name Joseph D. McDonald as a Defendant under Obstruction of Justice and to add the six unknown defendants." See Docket No. 27, p. 1. Plaintiff again alleges that he was detained "without his prescribed medication because of the inadequate medical treatment and lack there of, (sic) of proper medical care being administered by the Defendants at the Plymouth County Correctional Facility." Id. at p. 4. Johnson has not attached any proposed amended complaint.

The Court recognizes that "leave to amend should be 'freely give[n]' in instances in which 'justice so requires.'" See Nikitine v. Wilmington Trust Co., 715 F.3d 388, 390 (1st Cir. 2013) (quoting Fed. R. Civ. P. 15(a)(2)). However, in appropriate circumstances, leave to amend may be denied. Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (affirming denial of motion to amend that was filed over fifteen months after commencement of the action and more than nine months after initial amendment). Although the Supreme Court stated that the mandate for liberal amendment pursuant to Rule 15(a) "is to be heeded," Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court also recognized that "repeated failure to cure deficiencies by amendments previously allowed" constitutes an appropriate ground to deny leave to amend. Id. at 182.

As noted in Defendants' opposition, plaintiff's Second Motion to Amend does not remedy the deficiencies identified in defendants' motion to dismiss. Moreover, Johnson was provided with an opportunity - and took advantage of it - to file an Amended Complaint. He now seeks permission to file a Second Amended Complaint. Johnson's request for permission to file another amendment, more than eight months after issuance of the show cause order and more than fourteen months after the commencement of this action, comes too late under Rule 15(a). Thus, Johnson's Second Motion to Amend will be denied.

B.  Plaintiff's Motion to Extend Time

Johnson has filed a Motion seeking an extension of time to meet a filing deadline. See Docket No. 19. In addition to seeking an extension of time to locate an address for serving defendant Smethurst, he also seeks an extension of time to discover the names of four correctional officers involved in a 2010 strip search and related video surveillance footage. Again, for the reasons discussed above, see supra., ¶ III (A) (plaintiff's second motion to amend), Johnson's Motion to Extend Time request comes too late.

ORDER

Based upon the foregoing, it is hereby ORDERED

1. Defendants' Motion to Dismiss (Docket No. 20) is ALLOWED;

2. Plaintiff's Motion (Docket No. 19) for Extension of

Time is DENIED;

    2.      Plaintiff's Motion (Docket No. 27) for Leave to File a
            Second Amended Complaint is DENIED: and

    3.      The Clerk is directed to enter a final order of
            dismissal.


SO ORDERED.


March 17, 2014                          /s/ Douglas P. Woodlock
DATE                                    DOUGLAS P. WOODLOCK
                                        UNITED STATES DISTRICT JUDGE